FILED by **MM** D.C.

**Jul 28, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**22-20340-CR-WILLIAMS/MCALILEY**
Case No. _____

16 U.S.C. § 3372(a)(1)
16 U.S.C. § 3373(d)(1), (2)
16 U.S.C. § 3374
18 U.S.C. § 371
18 U.S.C. § 545
18 U.S.C. § 2
18 U.S.C. § 982(a)(2)(B)

**UNITED STATES OF AMERICA**

**v.**

**OMALISS KEO,**
**JAMES LAU,**
**DICKSON LAU,**
**SUNNY CHAN,**
**RAPHAEL CHEUNG MAN,**
**SARAH YEUNG, and**
**HING IP CHUNG,**

                    **Defendants. /**
_____

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

1.      The Lacey Act made it unlawful for any person to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States. 16 U.S.C. § 3372(a)(1).

2.      The Lacey Act, 16 U.S.C. §§ 3372(d)(1) and (2), also made it unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any

wildlife which has been, or is intended to be - (1) imported, exported, transported, sold, purchased, or received from any foreign country; or (2) transported in interstate or foreign commerce.

3.      The Lacey Act defines "wildlife" as "any wild animal, whether alive or dead, including without limitations any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean, arthropod, coelenterate, or other invertebrate, whether or not bred, hatched, or born in captivity, and includes any part, product, egg, or offspring thereof." 16 U.S.C. § 3371(a).

4.      In order to protect certain species against over-exploitation, the United States became a signatory to an international treaty known as the Convention on International Trade in Endangered Species of Wild Fauna and Flora (hereinafter "CITES").  Depending on the required level of protection needed by a species, CITES uses a system of Appendixes to classify protected wildlife and plants. Appendix I of CITES includes species which are threatened with extinction and for which trade must be subject to particularly strict regulation and for which no trade is allowed for commercial purposes. CITES, Art. II at ¶ 1. Appendix II of CITES includes wildlife species which although not necessarily threatened with extinction now, may become so unless trade in specimens of such species is strictly regulated. CITES, Art. II at ¶ 2.

5.      The United States and the Kingdom of Cambodia, along with over 180 other countries, were parties to CITES, and bound to abide by its provisions and restrictions. Parties to the Convention regulate trade in specimens of various species and their parts, products, and derivatives through a system of permits ("CITES Permit").   Such documents enable the Convention parties to monitor the effects of the volume and type of trade to ensure trade is legal and not detrimental to the survival of the species included in the various Appendixes.

6.      The United States Fish and Wildlife Service ("FWS"), Department of the Interior, is designated by Congress pursuant to the Endangered Species Act (ESA), Title 16, United States

Code, Section 1537(a), as the CITES enforcement authority within the United States. The Department of the Interior publishes regulations to implement CITES in 50 C.F.R. Part 23. A list of all species protected by CITES and the ESA implementation program is maintained pursuant to the Convention by the CITES Secretariat. 50 C.F.R. §§ 23.7 and 23.9.

7.      The provisions of CITES are implemented through the ESA, which states in relevant part, "It is unlawful for any person . . . to engage in any trade in any specimens [of wildlife] contrary to the provisions of ... [CITES] or to possess any specimens [of wildlife] traded contrary to the provisions of ... [CITES]." "Trade" means, among other things, "export." CITES, Art. I at ¶ (c). "Specimen" means "any animal … whether alive or dead." CITES, Art. I at ¶ (b).

8.      Long-tailed macaques (*Macaca fascicularis*), sometimes also known as crab-eating macaques, are protected under Appendix II of CITES. 50 C.F.R. §§ 23.7 and 23.9; https://checklist.cites.org/#/en/search/output_layout=alphabetical&level_of_listing=0&show_syn onyms=1&show_author=1&show_english=1&show_spanish=1&show_french=1&scientific_na me=Macaca+fascicularis&page=1&per_page=20. The long-tailed macaque has been regulated under CITES since 1977.

9.      Before importing a specimen of any animal protected under Appendix II of CITES into the United States, a valid CITES export permit must be obtained from the competent authority of the country of export or re-export.  A separate original or a true copy of a CITES Permit must be issued before the import occurs and the document must accompany each shipment and be presented to FWS upon importation. CITES, Art IV §§ 1 and 2; 50 C.F.R. § 23.20(c), 23.26(b).

10.     CITES Permits are individually numbered and include information such as the importer of record, exporter, species being traded, a description of the specimens, the CITES Appendix number, a source code, the quantity, and the date of issuance.  The source code indicates

the particulars of the specimen(s) listed on the CITES Permit: among others, the code "W" denotes a specimen taken from the wild; "R" denotes a ranched specimen, taken as an egg or juvenile from the wild and reared in a controlled environment; "C" denotes animals bred in captivity; all subject to certain other terms and provisions on the Convention.

11.     Under Title 50, Part 14, of the Code of Federal Regulations, all imports of wildlife, including long-tailed macaques, must be declared to the FWS on a completed, signed, and certified Declaration for Importation or Exportation of Fish and Wildlife (Form 3-177) and made available for inspection. Form 3-177 requires importers or their agents to provide, among other information, the source of the wildlife they are importing, specifically whether the wildlife was captive-bred, farm-raised, or wild-caught. Importers or their agents must furnish all applicable information requested on the Form 3-177 and must certify that the information furnished is true and complete to the best of his/her knowledge and belief. 50 CFR 14.61.

12.     **OMALISS KEO** was the Director General of the Ministry of Agriculture, Forestry and Fisheries (MAFF) of the Government of Cambodia and Chairman of the CITES Scientific Authority for Terrestrial Forest and Wildlife Resources, with oversight and responsibility for the issuance of CITES export permits.

13.     **JAMES LAU** was the President, Chief Executive Officer, and owner of Vanny Bio-Research Center ("Vanny HK"), later re-named Vanny Science Development LTD, which was a Hong Kong-based company engaged in, among other business, the capture and laundering of wild-caught long-tailed macaques in Cambodia, for export to the United States and elsewhere.

14.     **DICKSON LAU** was the General Manager of Vanny HK and also served as the Scientific Manager for Vanny HK.

4

15.     **SUNNY CHAN** was the Manager of Operations for Vanny HK.  **CHAN** handled the coordination of shipments of wild caught long-tailed macaques exported to the United States from Cambodia.

16.     **RAPHAEL CHEUNG MAN** was the Public Relations Manager and Export Manager for two facilities of Vanny HK in Cambodia operated by a subsidiary, Vanny Bio-Research Cambodia ("VBRC"), at Phnom Penh and Pursat.  **CHEUNG** coordinated the delivery of wild-caught long-tailed macaques to the VBRC facilities in Cambodia for export to the United States.

17.     **SARAH YEUNG,** who was physically located at the offices of Vanny HK, was the Finance Manager for VBRC. **YEUNG** executed the financial transactions that provided funding to VBRC's Phnom Penh and Pursat facilities for payment to black market collectors and MAFF employees for wild long-tailed macaques captured by them and delivered to VBRC's facilities for export to the United States.

18.     **HING IP CHUNG** was General Manager and Managing Director of VBRC. **CHUNG** facilitated payments to Cambodian government officials for their involvement in the capture of wild long-tailed macaques and payments made to black market collectors of wild-caught long-tailed macaques for export to the United States.

19.     Unindicted Co-Conspirator 1 (UCC-1) was a company formed under the laws of the State of Florida, with its listed place of business in the Southern District of Florida, which engaged in the importation and sale of non-human primates, including long-tailed macaques.

20.     Unindicted Co-Conspirator 2 (UCC-2) was a company formed under the laws of the State of Texas, with its listed place of business in Alice, Texas, which engaged in the importation and sale of non-human primates, including long-tailed macaques.

## COUNT 1
**Conspiracy**
**(18 .S.C. § 371)**

1.      The General Allegations section of this Indictment is realleged and incorporated

reference herein, as though set forth in its entirety.

2.      Beginning on an unknown date, but at least as early as on or about December 19,

2017, and continuing through on or about January 30, 2022, in the Southern District of Florida

and elsewhere, the defendants,

**OMALISS KEO,**
**JAMES LAU,**
**DICKSON LAU,**
**SUNNY CHAN,**
**RAPHAEL CHEUNG MAN,**
**SARAH YEUNG, and**
**HING IP CHUNG,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly

combine, conspire, confederate, and agree with each other and with other persons both known and

unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.   to import, export, transport, sell, receive, acquire, and purchase any wildlife, that is, long-tailed macaques (*Macaca fascicularis*), knowing that said wildlife was taken, possessed, transported, and sold in violation of any law, treaty, and regulation of the United States, in violation of Title 16, United States Code, Section 3372(a)(1);

b.   to make and submit any false record, account, and label for, and any false identification of, any wildlife, that is, long-tailed macaques (*Macaca fascicularis*), which has been, and is intended to be, imported, exported, transported, sold, purchased, and received from any foreign country; and transported in interstate or foreign commerce, in violation of 16 U.S.C. § 3372(d)(1), (d)(2); and

    c.   to fraudulently and knowingly import and bring into the United States any merchandise contrary to any law and regulation of the United States, in violation of Title 18, United States Code, Section 545.

## Purpose of the Conspiracy

3.    The purpose of the conspiracy was for the defendants and their co-conspirators, known and unknown to the Grand Jury, to smuggle CITES Appendix II protected species, that is, long-tailed macaques (*Macaca fascicularis*), into the United States for financial gain.

## Manner and Means of the Conspiracy

The manner and means by which the defendants sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.    The defendants and their unindicted co-conspirators established facilities in Cambodia purporting to breed long-tailed macaques for sale on the world market.

5.    The defendants and their unindicted co-conspirators engaged with customers in the United States and elsewhere and entered into contractual agreements to sell and export purportedly captive-bred macaques from Cambodia to the United States.

6.    The defendants and their unindicted co-conspirators established a logistics system to allow buyers to inspect macaques prior to sale, including through the use of veterinarians, to test the monkeys for disqualifying conditions, quarantine shipments prior to export, and arrange the necessary ground and air transportation to facilitate the transactions.

7.    The defendants and their unindicted co-conspirators arranged to illegally purchase additional long-tailed macaques from black market suppliers in Cambodia and Thailand to make up for the lack of supply of suitable monkeys at their purported breeding operations. The black-market suppliers, including MAFF, identified in Vanny HK and VBRC records through the use of

the letters A, B, C, D, E, F, G, H, K, P, and X, would primarily deliver the illegally acquired monkeys to the VBRC facility at Pursat.

8.      The defendants and their unindicted co-conspirators utilized the services of MAFF and its employees to further the purpose and objects of the conspiracy, and:

       a.   To secure CITES export permits which falsely identified wild-caught macaques as captive bred in the VBRC facilities;

       b.   To act as the source, under the designation of Black Market Supply "A," of wild-caught macaques from National Parks and protected areas which MAFF employees delivered to VBRC for later sale and export;

       c.   To provide Transport Permits which allowed macaques unsuitable for the export trade to be sent from the Pursat facility to the Phnom Penh facility where they were euthanized and their identification tags transferred to wild-caught macaques, to make it appear the black-market monkeys were captive bred at VBRC facilities;

       d.   To provide unofficial collection quotas, for which cash payments to MAFF were authorized at Vanny HK and made by VBRC employees.

9.      The defendants and their unindicted co-conspirators delivered and caused the delivery of wild-caught long-tailed macaques to various international airports in the United States, accompanied by Cambodian CITES Permits and FWS Form 3-177s falsely identifying the monkeys as captive bred.

10.      Upon entry into the United States, the long-tailed macaque shipments would be forwarded by truck from the port of entry to a quarantine facility designated by the importer/consignees, who were located in various states, including the Southern District of Florida.

### Overt Acts

In furtherance of the conspiracy, and to effect the objects and purpose thereof, there were committed and caused to be committed by at least one of the co-conspirators herein, within the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.      On or about December 19, 2017, **RAPHAEL CHEUNG MAN** met with **OMALISS KEO** and discussed **KEO**'s role in the collection of wild long-tailed macaques from Cambodian National Parks.

2.      On or about December 19, 2017, **RAPHAEL CHEUNG MAN** advised **JAMES LAU, HING IP CHUNG,** and **SARAH YEUNG** by email that **OMALISS KEO** would arrange for MAFF staff to collect somewhere around 2,000 monkeys for VBRC, for which VBRC would be charged a "Royalty tax of US 31.50 to Nation Treasure . . . ," and that **KEO** "will instruct the Director of the National Park to work out a survey report of the animal population."

3.      On or about May 4, 2018, **RAPHAEL CHEUNG MAN** emailed **JAMES LAU, HING IP CHUNG,** and **SARAH YEUNG** advising them that he had told **OMALISS KEO** that they were short of animals to export and needed 300 to 500 heads to fulfill a July order and that **KEO** would try to persuade his superior to allow collection of the needed monkeys. The email further reported that any collection by MAFF personnel would have to be after upcoming July 29 elections to avoid unnecessary attention from the public and non-governmental organizations (NGOs), but that VBRC could collect monkeys immediately and they would be off set against a collection quota of 2,000 monkeys that would be issued on May 17. The email also requested that the defendants arrange to make a payment of $40,000 to MAFF.

4.      On or about June 14, 2018, **RAPHAEL CHEUNG MAN** reported in an email addressed to **JAMES LAU, HING IP CHUNG, SARAH YEUNG,** and **SUNNY CHAN** that **CHEUNG MAN** received information from **OMALISS KEO** that the Minister had approved and issued the collection quota and final payment should be made to MAFF.

5.      Later on June 14, 2018, in an email addressed to **JAMES LAU, HING IP CHUNG, SARAH YEUNG**, and **SUNNY CHAN, RAPHAEL CHEUNG MAN** requested from **YEUNG** a "firm date for remittance" as he needed to respond to **OMALISS KEO** and advised the recipients that "besides election campaigns start most officials need the fund."

6.      On or about June 25, 2018, **RAPHAEL CHEUNG MAN**, along with **HING IP CHUNG, SARAH YEUNG**, and **SUNNY CHAN**, received a remittance document from an employee at Vanny HK reflecting that $83,259.00 originating from Vanny Chain Technology (Hong Kong) Limited passed through the Bank of America, N.A. in New York, NY and was received by VBRC's Cambodian bank.  Itemized on the remittance was $40,000.00 for "PP Animal Collection 2000 Heads."

7.      On or about June 26, 2018, an employee of Vanny HK sent an email to **RAPHAEL CHEUNG MAN, HING IP CHUNG, SUNNY CHAN,** and **SARAH YEUNG** with an attached VBRC internal accounting document "PP Purchase Application Form PF Number C1/E/18-06-18" which reflected a "Donation for CPP Party (Request from Mr. Omaliss)" in the amount of $10,000.00.  The document was signed by **CHUNG** and **CHEUNG MAN** and contained a notation that read, "Spoke to Mr. Lau."

8.      Later on June 26, 2018, **RAPHAEL CHEUNG MAN** by email provided a copy of MAFF Collection Permit No. 6298, for the collection of 2,000 monkeys by VBRC to **JAMES LAU, HING IP CHUNG, SARAH YEUNG**, and **SUNNY CHAN**.

9.      On or about July 21, 2018, VBRC shipped 440 samples of blood serum drawn from long-tailed macaques to an analytical laboratory in San Antonio, Texas to be tested; shipping documents accompanying the samples identified them as related to shipment

USA1811, and the accompanying CITES Permit KH1324 identified the source of the monkeys as captive bred.

10.     On or about July 25, 2018, UCC-1, located in the Southern District of Florida, imported a shipment identified as USA1810 containing 150 long-tailed macaques from VBRC at John F. Kennedy Airport (JFK), New York.

11.     On or about July 25, 2018, an FWS Form 3-177 and CITES Permit KH1294 were presented to FWS at JFK which reflected that shipment USA1810 was composed entirely of captive bred macaques.

12.     On or about August 13, 2018, **RAPHAEL CHEUNG MAN** reported to **JAMES LAU, DICKSON LAU, HING IP CHUNG, SARAH YEUNG**, and **SUNNY CHAN** that he had met with MAFF officials, including **OMALISS KEO** during which they discussed the price for the official quota of $150 for each of the 2,000 monkeys, and a price of $220 each for the unofficial quota of 3,000, which MAFF employees would collect and transport to the VBRC facility at Pursat. **CHEUNG MAN** further reported that MAFF preferred to begin collecting as soon as possible during the rainy season, expected to complete all necessary collection before the end of the year, and MAFF would provide VBRC 4 to 6 hours of notice prior to the deliveries, with the likely arrival time at night.  MAFF had also assured **CHEUNG MAN** that "unofficial animals" would not appear on VBRC's monthly report, and MAFF would conceal the unofficial monkeys from the local Phnom Penh and Pursat officials.

13.     On or about August 24, 2018, UCC-1, located in the Southern District of Florida, imported a shipment identified as USA1811 containing 360 long-tailed macaques from VBRC at JFK Airport, New York.

14.     On or about August 24, 2018, an FWS Form 3-177 and CITES Permit KH1320 were presented to FWS at JFK which reflected that shipment USA1811 was composed entirely of captive bred macaques.

15.     On or about November 2, 2018, **RAPHAEL CHEUNG MAN** sent an email to **DICKSON LAU, HING IP CHUNG, SARAH YEUNG,** and **SUNNY CHAN** in which he reported having met with the MAFF collection team leader and advanced US$10,000 to him to carry on the collection, that they had mutually agreed that MAFF would collect and deliver 300 animals weighing between 2 to 4 kgs within the month to VBRC, and that the MAFF employee was aware that VBRC wouldn't accept and would reject any inferior animal. **CHEUNG MAN** asked his superiors for the funds necessary to settle before the end of the month, representing the amounts owed to MAFF for the 300 monkeys and for Royalty taxes due on the official quota animals.

16.     On or about May 11, 2019, a shipment of 360 long-tailed macaques, containing approximately 74 wild caught monkeys, and identified as USA1973, was imported into the United States at JFK, and delivered to UCC-2 in Alice, Texas.

17.     On May 11, 2019, an FWS Form 3-177 and CITES Permit KH1391 were presented to FWS at JFK in New York, which reflected that shipment USA1973 was composed entirely of captive bred macaques.

18.     On or about June 27, 2019, a shipment of 360 long-tailed macaques, containing approximately 194 wild caught monkeys and identified as USA1974, was imported into the United States at JFK, and delivered to UCC-2 in Alice, Texas.

19.     On June 27, 2019, an FWS Form 3-177 and CITES Permit KH1407 were presented to FWS at JFK in New York, which reflected that shipment USA1974 was composed entirely of captive bred macaques.

20.     On or about September 3, 2019, Black Market Supplier D was paid approximately $10,380 for the delivery of approximately 60 wild caught long-tailed macaques to the VBRC facility at Pursat.

21.     On or about October 8, 2019, **HING IP CHUNG** informed **SARAH YEUNG** by email that VBRC didn't have enough cash on hand after having made payments to MAFF and requested $30,000.00 from **YEUNG** for the collection fund to pay for an additional 100 animals which were on their way.

22.     On or about December 13, 2019, Black Market Supplier A was paid approximately $8,360 for the delivery of approximately 38 wild caught long-tailed macaques to the VBRC facility at Pursat.

23.     On or about January 16, 2020, a shipment of 288 long-tailed macaques, containing approximately 237 wild caught monkeys and identified as USA2071, was imported into the United States at JFK, and delivered to UCC-2 in Alice, Texas.

24.     On or about January 16, 2020, an FWS Form 3-177 and CITES Permit KH1523 were presented to FWS at JFK in New York, which reflected that shipment USA2071 was composed entirely of captive bred macaques.

25. On or about January 30, 2020, Black Market Supplier C was paid approximately $10,645 for the delivery of approximately 68 wild caught long-tailed macaques to the VBRC facility at Pursat.

26. On or about February 21, 2020, a shipment of 288 long-tailed macaques, containing approximately 138 wild caught monkeys and identified as USA1916, was imported into the United States at Newark, New Jersey, and delivered to UCC-1 in Miami, Florida.

27. On or about February 21, 2020, an FWS Form 3-177 and CITES Permit KH1524 were presented to FWS at Liberty International Airport in Newark, New Jersey which reflected that shipment USA1916 was composed entirely of captive bred macaques.

28. From on or about March 11, 2020, to on or about October 20, 2020, VBRC paid approximately $2,515,954 for approximately 14,323 wild caught long-tailed macaques received from 7 black market suppliers.

29. On or about June 29, 2020, Black Market Supplier A was paid approximately $4,840 for the delivery of approximately 22 wild caught long-tailed macaques to the VBRC facility at Pursat.

30. On November 11, 2020, a shipment of 396 long-tailed macaques, containing approximately 323 wild caught monkeys and identified as USA2011, was imported into the United States at Dulles International Airport, Virginia, and delivered to UCC-1 in Miami, Florida.

31. On or about January 26, 2022, in an exchange of social media app communications, **RAPHAEL CHEUNG** discussed the delivery by Black Market Supplier D of wild caught long-tailed macaques to VBRC and received return confirmation that 115 macaques had in fact been

received and discussed the expected delivery by Black Market Supplier K of 170 wild caught long-tailed macaques.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 8
### Smuggling
### (18 U.S.C. § 545)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference herein, as though set forth in its entirety.

2.     On or about the dates identified below with respect to each Count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**OMALISS KEO,**
**JAMES LAU,**
**DICKSON LAU,**
**SUNNY CHAN,**
**RAPHAEL CHEUNG MAN,**
**SARAH YEUNG, and**
**HING IP CHUNG,**

did fraudulently and knowingly import and bring into the United States any merchandise, that is, wild caught long-tailed macaques (*Macaca fascicularis*), contrary to any law and regulation of the United States, through the presentation of false and fraudulent CITES Permits and FWS Form 3-177s:

| COUNT | DATE | SHIPMENT NUMBER | MACAQUES QUANTITY/ DECLARED VALUE | AIRPORT OF ENTRY | CONSIGNEE LOCATION |
|-------|------|-----------------|-----------------------------------|------------------|--------------------|
| 2 | 07/25/18 | USA1810 | 150 / $306,000 | JFK | Miami, FL |
| 3 | 08/24/18 | USA1811 | 360 / $661,680 | JFK | Miami, FL |
| 4 | 05/30/19 | USA1907 | 360 / $714,600 | JFK | Miami, FL |

| 5 | 02/21/20 | USA1916 | 288 / $697,500 | Newark Liberty | Miami, FL |
| 6 | 11/11/20 | USA2011 | 396 / $1,162,800 | Dulles Int'l. | Miami, FL |
| 7 | 05/27/21 | USA2104 | 540 / $1,755,000 | Dulles Int'l. | Miami, FL |
| 8 | 12/17/21 | USA2109 | 540 / $4,050,000 | O'Hare | Miami, FL |

In violation of Title 18, United States Code, Sections 545 and 2.

## **FORFEITURE**

1.     The allegations of this Indictment are hereby realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendants, **OMALISS KEO, JAMES LAU, DICKSON LAU, SUNNY CHAN, RAPHAEL CHEUNG MAN, SARAH YEUNG,** and **HING IP CHUNG,** have an interest.

2.     Upon conviction of a conspiracy to commit, or a violation of, Title 16, United States Code, Section 3372, as alleged in this Indictment, the defendants shall forfeit to the United States any and all wildlife imported, exported, transported, sold, received, acquired, or purchased contrary to Title 16, United States Code, Section 3372, pursuant to Title 16, United States Code, Section 3374.

3.     Upon conviction of a violation of Title 18, United States Code, Section 545, as alleged in this Indictment, the defendants shall forfeit to the United States of America any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offense or offenses, pursuant to Title 18, United States Code, Section 982(a)(2)(B).

All pursuant to Title 16, United States Code, Section 3374(d), Title 18, United States Code, Section 982(a)(2)(B), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by 28, United States Code, Section 2461.

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Thomas Watts-FitzGerald
Assistant United States Attorney

17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.:

v.

OMALISS KEO, ET AL.

**CERTIFICATE OF TRIAL ATTORNEY***

_____/
Defendants.

**Superseding Case Information:**

**Court Division** (select one)

☑ Miami    ☐ Key West    ☐ FTP
☐ FTL      ☐ WPB

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) _Yes_
    List language and/or dialect: _Mandarin Chinese; Kmer_

4.  This case will take _15_ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                    (Check only one)
    I     ☐ 0 to 5 days                 ☐ Petty
    II    ☐ 6 to 10 days                ☐ Minor
    III   ☑ 11 to 20 days              ☐ Misdemeanor
    IV    ☐ 21 to 60 days             ☑ Felony
    V     ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) _No_
    If yes, Judge _____ Case No. _____
7.  Has a complaint been filed in this matter? (Yes or No) _No_
    If yes, Magistrate Case No. _____
8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) _Yes_
    If yes, Judge _____ Case No. _Please see attached form_
9.  Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of
12. Is this a potential death penalty case? (Yes or No) _No_
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) _No_
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) _No_

By: _____
Thomas Watts-FitzGerald
Assistant United States Attorney
FLA Bar No.    0273538

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**v.**

**OMALISS KEO, ET AL.** _____ /

**CERTIFICATE OF TRIAL
ATTORNEY CONTINUED**

## PREVIOUSLY FILED MATTERS IN DISTRICT COURT

1:18-mj-2184-JJO

1:18-mj-2580-Mcaliley

1:18-mj-3808-JJO

1:19-mj-2184-McAliley

1:19-mj-2185-McAliley

1:19-mj-2920-JJO

1:20-mj-2267-McAliley

1:20-mj-2592-Reid

1:20-mj-2674-AOR

1:20-mj-2730-EGT

1:20-mj-4080-EGT

1:20-mj-4133-Louis

1:21-mj-2251-AOR

1:21-mj-2252-AOR

1:21-mj-2253-AOR

1:21-mj-2294-AOR

1:21-mj-3113-AOR

1:22-mj-2071-Louis

1:22-mj-2115-Reid

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:** ___Omaliss Keo_____

**Case No:** _____

Count(s) #: 1

<u>Conspiracy</u>_____

<u>Title 18, United States Code, Section 371</u>_____
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2-8

<u>Smuggling</u>_____

<u>Title 18, United States Code, Section 545</u>_____
* **Max. Term of Imprisonment: 20 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   James Lau

**Case No:**

Count(s) #: 1

Conspiracy

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2-8

Smuggling

Title 18, United States Code, Section 545
* **Max. Term of Imprisonment: 20 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   Dickson Lau

**Case No:** _____

Count(s) #: 1

Conspiracy

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2-8

Smuggling

Title 18, United States Code, Section 545
* **Max. Term of Imprisonment: 20 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**:   Sunny Chan

**Case No**:

Count(s) #: 1

Conspiracy

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2-8

Smuggling

Title 18, United States Code, Section 545
* **Max. Term of Imprisonment: 20 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**   Raphael Cheung Man

**Case No:**

Count(s) #: 1

Conspiracy

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2-8

Smuggling

Title 18, United States Code, Section 545
* **Max. Term of Imprisonment: 20 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ___Sarah Yeung_____

**Case No:** _____

Count(s) #: 1

Conspiracy_____

Title 18, United States Code, Section 371_____
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2-8

Smuggling_____

Title 18, United States Code, Section 545_____
* **Max. Term of Imprisonment: 20 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Hing Ip Chung

**Case No:**

Count(s) #: 1

Conspiracy

Title 18, United States Code, Section 371
**\* Max. Term of Imprisonment: 5 Years Imprisonment**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 Years**
**\* Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2-8

Smuggling

Title 18, United States Code, Section 545
**\* Max. Term of Imprisonment: 20 Years Imprisonment**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 Years**
**\* Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**